ALVAREZ, P.J.A.D.
*502 Tried to a jury, co-defendants Joey Fowler and Jamil Hearns were convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three). Only Hearns was named in count four of the indictment, which charged hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4), and the jury convicted him of that offense as well. We now consolidate defendants' appeals for decision, vacate the convictions because of errors in the jury charge, and remand for a new trial.
*973 We glean the facts from the trial record. During the early morning hours of March 5, 2011, defendants were standing outside a crowded bar. Some weeks prior, Fowler had reported being carjacked by several men, including the victim, Donnell Johnson. Johnson and his cousins, Algere Jones and Rashon Jenkins, were socializing at that same establishment. At approximately 2:40 a.m., Johnson left the bar, and Jones, who had done so earlier, pulled alongside him in his vehicle.
Jones testified that as Johnson leaned into the car while the men talked, Jones saw Hearns approach through his rearview mirror. Jones knew Hearns from having grown up in the same neighborhood. Jones heard gunshots and saw a gun in Hearns's *503 hands. Johnson initially ran, then got into Jones's car. Jones drove Johnson to a hospital emergency room; Johnson died later from gunshot wounds. He had been struck twice, once by a bullet to the leg, and by a second bullet to the back. The gunshots traveled in an upward trajectory.
Elizabeth Police Department Officer James Malone, Jr., was working security that night outside the bar. At approximately 2:45 a.m., he heard five or six gunshots in rapid succession and immediately drove towards the sound. Malone saw a man dressed in a black hooded sweatshirt, later identified as Hearns, running from the scene while holding something in his right hand.
Hearns jumped into a silver Infiniti. Fowler, who was standing by the driver's side door, got into the vehicle and quickly pulled away from the curb. Malone immediately stopped the car and saw Hearns reaching with his right hand towards the back seat, placing a gun in the rear center console. When told to raise their hands, all the occupants, including Fowler's nephews who were in the back seat, complied. Hearns, however, repeatedly tried to get out of the vehicle while Malone held the door shut. Hearns was arrested when additional officers arrived.
Hearns testified that while he was passing the time in front of the bar, he was approached by Jones, who demanded repayment on the spot of a $5000 loan. Hearns offered to give Jones all the cash in his pocket, $1300. Jones refused. Johnson, who was standing next to Jones, tried to convince Jones to accept the partial payment.
Hearns said after rejecting his offer, Jones pulled out a gun and the two men began to wrestle. Hearns grabbed Jones's arm and wrist, and began to bang the gun on his knee in an effort to knock it out of Jones's hand. As the gun hit his knee, it fired. The bullets ricocheted off the ground and into a parked car. When the gun actually fell to the ground, Hearns grabbed it and ran. After Hearns testified in his defense, the State presented two rebuttal *504 witnesses, another officer and Tywan Cobb.[2]
Cobb said he had spoken to Hearns two or three times daily over a couple of months. Hearns told him he shot someone twice, and that he was carrying the weapon that evening for that purpose. Hearns told Cobb he intended to claim there had been a "tussle" for money, although none had taken place. Hearns also told him he changed his clothes that night from a bright hoodie into a dark one before the shooting, a fact corroborated by the video film from a camera outside the bar.
*974 The officer who testified as a rebuttal witness said that an empty liquor bottle of the brand Hearns claimed he bought that night at the bar immediately before the shooting was found on the floor of Fowler's car. Contrary to Hearns's testimony, no full bottle of that liquor was in the vehicle. The officer also said she did not see any ricochet or other impact marks in any photos of the shooting scene.
Hearns's attorney asked the judge to instruct the jury on self-defense. The judge refused, reasoning that Hearns's defense to the shooting was not self-defense, but rather accident.
The judge invited counsel to submit an "accident" instruction; the record does not indicate if any such instruction was submitted. The judge also said that in any event, no instruction was necessary because a finding of purpose to kill, necessary for a murder conviction, would run counter to any theory that the death occurred as a result of accident. Thus, he reasoned, if the jury believed Hearns's testimony, they would acquit him and Fowler, who was charged with murder as an accomplice.
Counsel and the court further agreed no lesser-included offenses should be charged because, as the judge explained, "if you believe [ ] Hearns' version of what happened, there's no criminal state of mind for any murder, not for any of the lesser includeds.
*505 So where is the, you know-I don't see any version of facts that would support an aggravated manslaughter-the state of mind, aggravated or reckless." The prosecutor agreed, and the judge went on to state: "Everyone is agreeing, no lesser includeds?" Not hearing any response, the judge charged only murder.
Fowler raises the following issues for our consideration:
POINT I
THE COURT ERRED IN REFUSING TO INSTRUCT ON SELF-DEFENSE AND ACCIDENT DESPITE ITS ACKNOWLEDGMENT THAT THE CODEFENDANT TESTIFIED THAT THE VICTIM WAS SHOT BY ACCIDENT IN THE COURSE OF THE CODEFENDANT'S ATTEMPT TO DEFEND HIMSELF.
POINT II
THE COURT ERRED IN REFUSING TO ALLOW DEFENDANT TO CROSS-EXAMINE ALGERE JONES IN ORDER TO REBUT THE STATE'S MOTIVE EVIDENCE.
POINT III
THE COURT ERRED IN FAILING TO GIVE A COOPERATING-WITNESS INSTRUCTION WITH RESPECT TO ALGERE JONES.
POINT IV
THE COURT ERRED IN DENYING THE MOTION FOR A NEW TRIAL AFTER THE JURY HEARD TESTIMONY THAT DEFENDANT HAD PREVIOUSLY BEEN INCARCERATED.
POINT V
THE CONVICTION FOR POSSESSION OF A GUN FOR AN UNLAWFUL PURPOSE SHOULD HAVE MERGED WITH THE MURDER.
POINT VI
THE 50-YEAR TERM IMPOSED ON DEFENDANT, WHO WAS CHARGED AS AN ACCOMPLICE, IS FIVE YEARS GREATER THAN THE SENTENCE IMPOSED ON THE CODEFENDANT, WHO WAS THE PRINCIPAL, AND IS EXCESSIVE.
In a pro se brief, Fowler asserts the following points:
*975 POINT I:
THE TRIAL COURT PREJUDICED THE DEFENDANT BY REFUSING TO INSTRUCT ON SELF DEFENSE TO THE JURY. BY SUCH ERROR, THE DEFENDANT WAS DEPRIVED OF HIS RIGHT OF A FAIR TRIAL, BECAUSE THE RECORD REVEALS SEVERAL TESTIMONIES AT TRIAL ONLY ATTRIBUTED TO CODEFENDANT'S LIABILITY OF ACTS IN SELF DEFENSE REQUIRING REVERSAL OF THE CONVICTION (Partially raised below).
POINT II:
*506 APPELLANT MOVES FOR A REMAND TO THE TRIAL COURT, TESTIMONY ABOUT DEFENDANT'S PRIOR INCARCERATION PREJUDICED HIS RIGHT TO A FAIR TRIAL (Partially raised below).
POINT III
APPELLANT MOVES FOR A REMAND TO THE TRIAL COURT, THE TESTIMONY OF TYWAN COBB UNFAIRLY PREJUDICED THE DEFENDANT (Partially raised below).
POINT IV
APPELLANT MOVES FOR A REMAND THE TESTIMONY OF ALGERE JONES WAS RES GESTAE EVIDENCE IN NATURE, AND SHOULD HAVE BEEN ALLOWED UNDER N.J.R.E. 803(c)(3), TO DEFEAT THE STATE'S THEORY ON MOTIVE, WITH THE FACTS, THEREFORE DEFENDANT AT LOWER COURT WAS DEPRIVED A FAIR TRIAL (Partially raised below).
POINT V
APPELLANT MOVES FOR A REMAND TO THE TRIAL COURT TO CONDUCT A GROSS HEARING SINCE THE CREDIBILITY OF A WITNESS CLEARLY AND CONVINCINGLY CONSTITUTES A DENIAL OF JUSTICE, MOTIVATED REQUIRES CONVICTION BE OVERTURNED AND VACATED DUE TO AN UNFAIR TRIAL WHICH VIOLATES DEFENDANT'S RIGHTS GUARANTEED BY THE U.S. CONST. AMENDS. V & XIV, § 1; N.J. CONST. ART. I, PAR. 1 (Partially raised below).
Hearns raises the following issues:
Point 1
The trial court erred in denying defendant's request to charge self-defense, and in failing to sua sponte charge aggravated and reckless manslaughter as lesser included offenses to murder; the trial court erred in denying defendant's motion for a new trial on this ground (partially raised below).
Point 2
The trial court erred in denying defendant's motion to dismiss the indictment because of violation of his speedy trial right.
Point 3
The trial court erred in not granting severance during trial, sua sponte, or in not granting defendant Hearns a new trial on this ground.
Point 4
Reference to the co-defendant Fowler's prior incarceration caused an unfair trial for both defendants during the joint trial below.
Point 5
Defendant's right to remain silent was violated.
Point 6
The prosecutor placed improper hearsay before the jury that violated defendant's *976 state and federal right to confront the witnesses against him. *507 Point 7
An unfair trial was caused by the trial judge telling the jury that a State witness was incarcerated and being brought over from prison to testify (plain error).
Point 8
Defendant's sentence is improper and excessive.
We address only the jury charges. The omission of the self-defense instruction, and corresponding instructions as to lesser-included offenses, was prejudicial error.
I.
Plain error in the jury charge occurs if it prejudicially affects the substantial rights of a defendant, is sufficiently grievous to justify notice by the reviewing court, and convinces the court that the error possessed a clear capacity to bring about an unjust result. See State v. Singleton, 211 N.J. 157, 182-83, 48 A.3d 285 (2012). Erroneous jury instructions are "poor candidates for rehabilitation under the harmless error philosophy." State v. Gonzalez, 444 N.J. Super. 62, 70, 130 A.3d 1250 (App. Div. 2016) (quoting State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979) ). Whether or not requested to do so, a court must clearly and correctly charge the jury in order for a defendant to receive a fair trial. State v. Maloney, 216 N.J. 91, 104-05, 77 A.3d 1147 (2013) (citing State v. Green, 86 N.J. 281, 291, 430 A.2d 914 (1981) ).
II.
N.J.S.A. 2C:3-4 defines self-defense:
the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
[ N.J.S.A. 2C:3-4(a).]
A "trial judge must charge the jury on self-defense 'if there exists evidence in either the State's or the defendant's case sufficient to provide a "rational basis" for [its] applicability.' " State v. Blanks, 313 N.J. Super. 55, 69-70, 712 A.2d 698 (App. Div. 1998) (alteration in original) (quoting *508 State v. Bryant, 288 N.J. Super. 27, 35, 671 A.2d 1058 (App. Div. 1989) ). When a court is deciding whether to charge the jury on self-defense, it "should consider the circumstances that might give rise to that defense, including the defendant's and alleged aggressor's conduct, rather than the charges chosen by the prosecutor." State v. Rodriguez, 195 N.J. 165, 174, 949 A.2d 197 (2008). As the Court said in Rodriguez, viewing the evidence in the light most favorable to a defendant, as long as the instruction "is requested and supported by some evidence in the record, it must be given." Ibid.
Hearns's testimony was "some evidence in the record" that required the judge to give the instruction. Whether credible or not, accepted by the jury or not, Hearns said he feared Jones was going to kill or injure him as they wrestled over the gun. As the judge observed, however, defendants were charged with Johnson's murder, not with harming Jones.
III.
Hearns went on to testify that while wrestling with Jones, the gun fell to the ground and went off by "accident," resulting in Johnson's lethal injuries. To have failed to fashion individualized instructions despite this narrative, on the theory that if the jury were to correctly follow the murder charge they would acquit without any *977 additional explanation of the law, was prejudicial error.
A necessary first step was to give the jury a molded self-defense charge-but other instructions were also necessary because the injury was allegedly accidentally inflicted on another-not the attacker. Self-defense does, however, set the stage for the jury's consideration of whether Hearns acted recklessly by wrestling with Jones and banging the gun against his knee during the struggle in the midst of a crowd.
The Court in Rodriguez observed that if a person uses force in self-defense, and in doing so recklessly or negligently injures a bystander, although not guilty of assault upon the attacker, he "may" be found guilty of assault upon the bystander.
*509 Rodriguez, 195 N.J. at 172-73, 949 A.2d 197. The discussion in Rodriguez was premised on N.J.S.A. 2C:3-9(c), which states:
When the actor is justified ... in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.
The statute explains that the defense of self-defense cannot serve as legal justification for an assault on a third party. By analogy, however, it informs the lesser-included offenses that should have been charged to the jury.
The statute shifts the focus away from the initial triggering act of self-defense to the nature of the conduct that resulted in the harm to a bystander. The question becomes-was the conduct reckless? Merely negligent? Did it create a risk of injury?
The jury should have considered whether, if they believed Hearns's initial premise that he was acting in self-defense, his conduct was reckless and, if so, to what extent. This question can only be addressed by lesser-included homicide instructions, aggravated manslaughter and reckless manslaughter. N.J.S.A. 2C:11-4(a)(1) and 2C:11-4(b)(1).
Ordinarily, self-defense is a defense to aggravated manslaughter or reckless manslaughter. Rodriguez, 195 N.J. at 172-73, 949 A.2d 197. It is not a defense available to Hearns because he said Johnson lost his life by accident-injured by random shots fired from the gun. If the statute bars the defense of self-defense when the actor merely injures an innocent bystander, the defense should not be available when the result is a killing. Johnson did not inflict "unlawful force" upon Hearns. The underlying rationale for the defense is missing, therefore it should not be available to the actor in this situation as against the victim.
In other words, if the jury decides defendant was acting in self-defense,[3] they must then consider whether the State proved *510 beyond a reasonable doubt that Johnson's death resulted from Hearns's recklessness. The question is: if Hearns was acting in self-defense against Jones, did Hearns kill Johnson by reckless conduct?
Giving the jury the alternative lesser-included forms of manslaughter allows them, within the framework of the New *978 Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9, to assess whether the killing was truly accidental. If it was not murder, aggravated manslaughter, or manslaughter, then Hearns could be fairly said to have accidentally killed and will be acquitted. But the jury must be afforded the opportunity to make the decision with explicit guidance. The issue is not whether the killing was accidental-but whether the State has proven, beyond a reasonable doubt, any of the offenses included in the Code.
IV.
Additionally, the jury would have to be carefully instructed that although Hearns could be found guilty of one of the lesser-included offenses, Fowler, who was charged as an accomplice, could not. N.J.S.A. 2C:2-6(a) makes a person guilty of an offense actually committed by another when he is legally accountable, a conspirator, or an accomplice of the other. N.J.S.A. 2C:2-6(a). Subsection (c) defines accomplice liability. For the State to prove accomplice liability beyond a reasonable doubt, the actors must have a shared purpose. See State v. Daniels, 224 N.J. 168, 179, 129 A.3d 1056 (2016) ; State v. Whitaker, 200 N.J. 444, 457-58, 983 A.2d 181 (2009) ; State v. Hill, 199 N.J. 545, 567-68, 974 A.2d 403 (2009). Thus, should the jury accept Hearns's version of events, Fowler could not be convicted as an accomplice or otherwise be legally held accountable for the death because, according to Hearns, the killing occurred unexpectedly when Jones attacked him. The allegedly spontaneous nature of the event, a confrontation solely involving Hearns, Jones, and Johnson, means there cannot be a shared purpose.
*511 V.
We do not reach the other issues raised by defendants, as further discussion becomes unnecessary in light of our reversal. To summarize, the judge must charge, should Hearns testify in the same manner at the new trial as he did in his earlier trial, that if the jury finds he struggled with Jones in self-defense, and the gun fired in the struggle, they must then consider whether Hearns is guilty of aggravated manslaughter by "recklessly caus[ing] death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). The judge must also charge manslaughter as to Hearns, that being a criminal homicide committed recklessly. See N.J.S.A. 2C:11-4(b)(1). The jury must be clearly instructed that only if they find Hearns guilty of murder can they also convict Fowler.
The instructions given to the jury that resulted in defendants' convictions did not adequately address Hearns's testimony. That omission affected the substantial rights of both defendants and had the clear capacity to bring about an unjust result. See Singleton, 211 N.J. at 182-83, 48 A.3d 285.
Remanded for a new trial in accord with this opinion.

Cobb had shared a cell with Hearns for two to three months before the trial; this fact was kept from the jury.

The State must bear the burden of disproving the defense, as is true in run-of-the-mill self-defense cases. See State v. Munroe, 210 N.J. 429, 446, 45 A.3d 348 (2012).