# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0795-18T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL A. MALTESE,

      Defendant-Appellant.

_____

Argued September 29, 2020 – Decided October 13, 2020

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 09-02-0184.

Elizabeth C. Jarit, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, of counsel and on the briefs).

David M. Liston, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

PER CURIAM

This case returns to us after a second trial on remand. Defendant appeals from his convictions for two counts of second-degree passion/provocation manslaughter, N.J.S.A. 2C:11-4(b)(1), (2). Defendant primarily argues—and the State agrees—that the judge's final charge on self-defense included language that the judge and counsel agreed would be omitted. The parties and judge agreed not to include in the charge that defendant had a duty to retreat because, as the judge admitted, defendant's defense was that he was not the initial aggressor. We conclude the self-defense charge constituted plain error and reverse for a new trial.[1]

A fight ensued between defendant, then nineteen-years-old, and his father at defendant's parents' residence, where defendant and his girlfriend (codefendant) lived. The father threw something at defendant and yelled, "I wish you were never born . . . you mean absolutely nothing to me." Defendant jumped on his father and started squeezing his neck. His mother attempted to pull the two apart, but codefendant restrained her. After the father stopped

_____

[1] In a separate opinion also released today, we upheld an order denying defendant's petition for post-conviction relief (PCR). See State v. Maltese, No. A-0795-18T4 (App. Div. ____). Defendant had filed that petition contending his trial and appellate counsel rendered ineffective assistance in the first trial and direct appeal.

moving, codefendant released the mother, who defendant strangled to death after she smacked him.

Defendant and codefendant dragged the bodies to the bathroom and placed them into the bathtub. They put garbage bags over the victims' heads, soaked the bodies in bleach and water, wrapped the victims' bodies with blankets, garbage bags, and tape, and then placed them into the trunk of defendant's father's vehicle. Defendant and codefendant buried the victims in a shallow grave at a nearby park.

They returned to defendant's parent's mobile home and switched cars. Defendant and codefendant spent three nights at a nearby Red Roof Inn and withdrew cash on multiple occasions using a bank card shared by defendant's mother and sister. They also used the same card for other expenses related to a music festival in upstate New York.

Eleven days later, defendant and his sister reported their parents missing to police. Defendant's other sister also informed police that someone had used the bank card to withdraw cash from their shared account. Police uncovered a surveillance video of defendant using the card. The next day, defendant consented to a search of his father's vehicle, and police discovered two shovels and a flashlight. Defendant then agreed to go to headquarters for questioning.

Two grand juries returned separate indictments against defendant. In the first, defendant was charged with two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (counts one and two); third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1) (count three); two counts of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3 (counts five and seven); two counts of third-degree fraudulent use of a credit card, N.J.S.A. 2C:21-6(h) (counts six and eight); third-degree attempted theft, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:20-3 (count nine); fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count ten); fourth-degree false swearing, N.J.S.A. 2C:28-2(a) (count eleven); and third-degree hindering investigation, N.J.S.A. 2C:29-3(b)(4) (count twelve).[2] In the second, defendant was charged with second-degree unlawfully disturbing, moving, or concealing human remains, N.J.S.A. 2C:22-1(a)(1), and third-degree failing to dispose of human remains in a manner prescribed by law, N.J.S.A. 2C:22-1(b).

Following the first jury trial, defendant was convicted of the lesser-included offense of second-degree passion/provocation manslaughter on count

---

[2] The grand jury also charged codefendant with committing crimes set forth in counts one, two, five, six, seven, eight, nine, ten, and twelve. Additionally, she was charged with third-degree hindering apprehension, N.J.S.A. 2C:29-3(a)(3) (count four).

A-0795-18T4

one; first-degree murder on count two; and counts three, five, six, ten, eleven, and twelve. Defendant received an aggregate prison sentence of sixty-four years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In defendant's first appeal, he argued that certain statements should have been suppressed as fruit of the poisonous tree. We rejected those contentions and affirmed. State v. Maltese, No. A-5323-10 (App. Div. Nov. 8, 2013). The Supreme Court granted certification. State v. Maltese, 217 N.J. 623 (2014). The Court affirmed defendant's convictions as to second-degree disturbing, moving, or concealing human remains, and counts three, five, six, ten, eleven, and twelve. State v. Maltese, 222 N.J. 525, 553 (2015). The Court reversed and remanded for the retrial of counts one and two to determine whether the physical evidence obtained as a result of defendant's suppressed statements would be admissible under the inevitable discovery exception to the exclusionary rule. Ibid. The State filed a petition for certiorari, which was denied on February 29, 2016. New Jersey v. Maltese, ___ U.S. ___, 136 S. Ct. 1187 (2016).

On remand, the judge conducted an inevitable discovery hearing and granted the State's motion to admit physical evidence. Defendant requested to proceed pro se but later withdrew that request. He did so after the judge held a

hearing to ensure that defendant understood "everything that's involved in proceeding pro se."

The judge conducted the retrial on counts one and two—passion/provocation manslaughter—and the jury found defendant guilty on both counts. The judge sentenced defendant to an aggregate prison term of fourteen years subject to NERA.

On appeal, defendant argues:

POINT I

DEFENDANT'S CONVICTION ON COUNT ONE MUST BE REVERSED BECAUSE THE JURY WAS ERRONEOUSLY INSTRUCTED THAT THERE WAS A DUTY TO RETREAT AS PART OF THE SELF-DEFENSE CHARGE.

POINT II

DEFENDANT'S CONSTITUTIONAL RIGHT TO REPRESENT HIMSELF WAS VIOLATED WHEN THE [JUDGE] FAILED TO CONDUCT THE PROPER INQUIRY AND PROVIDED MATERIAL MISREPRESENTATIONS ABOUT . . . DEFENDANT'S LEGAL RESOURCES SHOULD HE PROCEED PRO SE.

I.

We begin by addressing defendant's argument on the jury charge. He primarily contends that we must reverse because the judge instructed the jury—contrary to an agreement by counsel and the judge—that defendant had a duty to retreat. He maintains that the agreement was reached because defendant presented evidence that he strangled his father in self-defense and that his father was the initial aggressor.

Defendant testified that he could remember his father habitually physically abusing him, his mother, and his sisters. Defendant recalled his father verbally and sexually abusing him since he was just four or five years old. He stated that his father would frequently throw things—such as a glass ashtray or unopened beer can—at defendant, and that his father would slam his head against a wall or kick him.

Defendant testified that on the night of his parents' deaths, his father began to argue with him. Defendant confronted his father, for the first time, about his previous sexual abuse. Defendant stated that he was walking away from his father when his father threw something at his head and tackled defendant to the ground. He testified that his father pinned him to the ground, was trying to choke him, and told defendant, "I'm going to kill you." Believing his father was trying to kill him, defendant began to push back on his father, which resulted in

A-0795-18T4

his father biting his finger. Defendant testified that he was able to get up and started to move away from his father when his father tackled him again. He stated that he was able to get on top of his father at one point, but that his father continued punching him and trying to choke him. At some point, defendant's father lost consciousness.

Indeed, in discussing the charge with counsel, the judge stated that "[t]he duty to retreat . . . needed to come out [of the jury instructions]. Because there's no duty to retreat in this case." The prosecutor agreed, and defendant did not object.[3] However, when it came time for the final charge on self-defense, the judge addressed the jury and gave the following instruction:

> The State has the burden to prove to [the jury] beyond a reasonable doubt that the defense of self-defense is untrue. This defense only applies if all the conditions or elements previously described exist. The defense must be rejected if the State disproves any of the conditions beyond a reasonable doubt.
>
> If the State carries [its] burden, then [the jury] must disallow the defense. If the State does not satisfy this burden, and [the jury has] a reasonable doubt, then it must be resolved in favor of the defendant, and [the jury] must allow the claim of self-defense[] and acquit the defendant.

---

[3] Neither the assistant prosecutor nor defense counsel mentioned—in their opening statements and closing arguments—defendant's purported duty to retreat, which corroborates counsels' agreement that it was not relevant to defendant's self-defense defense.

The same theory applies to the issue of retreat. Remember that the obligation of the defendant to retreat only arises if [the jury] find[s] that the defendant resorts to the use of deadly force. If the defendant does not resort to the use of deadly force, one who is unlawfully attacked may hold his/her position and not retreat whether the attack upon him/her is by deadly force or some lesser force.

The burden of proof is upon the State to prove beyond a reasonable doubt that the defendant knew he/she could have retreated with complete safety. If the State carries its burden then [the jury] must disallow the defense. If the State does not satisfy this burden and [the jury has] a reasonable doubt, then it must be resolved in favor of the defendant and [the jury] must allow the claim of self-defense and acquit the defendant.

[(Emphasis added).]

When the judge instructed the jury on self-defense, he properly omitted the first reference to retreat. See Model Jury Charge (Criminal), "Justification – Self Defense: In Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011). However, he failed to remove the second reference to retreat from the jury charge, contrary to the agreement. See ibid.

"[C]lear and correct jury instructions are essential for a fair trial[.]" State v. Martini, 187 N.J. 469, 477 (2006) (first alteration in original) (quoting State v. Koskovich, 168 N.J. 448, 507 (2001)). We must give "careful attention" to

9

jury instructions.  State v. Montalvo, 229 N.J. 300, 320 (2017).  "They 'must provide a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find."'"  Ibid. (quoting State v. Singleton, 211 N.J. 157, 181-82 (2012)). Essentially, the judge's instructions on the law are a "roadmap" for the jurors to follow.  State v. Fowler, 239 N.J. 171, 192 (2019); State v. Martin, 119 N.J. 2, 15 (1990).  "[W]ithout an appropriate charge[,] a jury can take a wrong turn in its deliberations."  Martin, 119 N.J. at 15.

"Because defendant did not object to [this] jury charge, we review the instruction for plain error."  State v. Munafo, 222 N.J. 480, 488 (2015).  Plain error refers to whether the claim of error was "clearly capable of producing an unjust result."  R. 2:10-2.  Defendant must establish "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court[,] and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."  State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).  It is well settled that "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error."  State v. Afanador, 151 N.J. 41, 54 (1997); see also State

v. Vick, 117 N.J. 288, 289 (1989) (emphasizing that "erroneous instructions are almost invariably regarded as prejudicial").

The applicable law and model jury charge make clear that a person has no duty to retreat within or from his own dwelling. See N.J.S.A. 2C:3-4(b)(2)(b)(i) (codifying that defendant "is not obliged to retreat from his dwelling, unless he is the initial aggressor"); Montalvo, 229 N.J. at 319-20; State v. Gartland, 149 N.J. 456, 467 (1997); Model Jury Charge (Criminal), "Justification – Self Defense in Self Protection (N.J.S.A. 2C:3-4)" n.4. The State agrees the judge erred.

Precedent addressing the consequence of no duty to retreat exists, particularly on the removal of unfavorable doubts associated with a defendant's conduct. For example, in State v. Bonano, 59 N.J. 515, 521 (1971), the Supreme Court reversed the defendant's conviction, noting that if the jury was aware that the defendant had no duty to retreat, "this knowledge would almost certainly have eradicated any doubt unfavorable to [the] defendant" that the prosecutor's statement might have provoked.

Our Supreme Court has routinely held that an erroneous instruction on the duty to retreat requires reversal. In Montalvo, the Court found that a trial judge committed reversible error by instructing a jury that self-defense does not justify

the possession of a machete in one's own home unless the defendant armed himself spontaneously to repel an immediate threat. 229 N.J. at 321-24; see also State v. Abbott, 36 N.J. 63, 72-74 (1961) (reversing a conviction where the jury was improperly instructed on the defendant's duty to retreat); State v. Blanks, 313 N.J. Super. 55, 70-71 (App. Div. 1998) (reversing a conviction on plain error where the judge improperly charged defendant with a duty to retreat); State v. Brown, 131 N.J. Super. 228, 234-35 (App. Div.) (reversing a conviction where the judge correctly charged the jury on the duty to retreat but failed to mention the State had the burden to disprove the defendant's defense), aff'd o.b., 66 N.J. 146 (1974).

This jury charge was clearly capable of bringing about an unjust result. If the jury found that the State proved beyond a reasonable doubt that defendant met the factors as to passion/provocation manslaughter, and did not do so in self-defense, it was required to find him guilty of passion/provocation manslaughter. The trial judge's failure to remove the duty to retreat language from the jury instructions undermined defendant's defense of self-defense because the jury considered that defense after it had been erroneously instructed that defendant had a duty to retreat. For that reason alone, the flawed jury charge constituted plain error, which was not harmless. Had the jury heard the proper

instruction—without any theory of defendant's purported duty to retreat—it would have correctly considered his defense of self-defense. But as the charge was given, that was not the case.

## II.

We now turn to defendant's argument as to his request to proceed pro se. The United States Constitution and the New Jersey Constitution grant defendants, who are charged with a criminal offense, the right to have the assistance of counsel. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. "The corollary to the right of a criminal defendant to be represented by an attorney is the defendant's right to represent himself." State v. King, 210 N.J. 2, 16 (2012) (citing Faretta v. California, 422 U.S. 806, 814 (1975)). The Faretta Court recognized that a defendant's decision to proceed pro se may ultimately be detrimental to the defendant, but the defendant still has the right to make this decision. 422 U.S. at 834.

Before invoking the right to self-representation, a trial judge has the duty to assure that a defendant's waiver of counsel is done "knowingly and intelligently." State v. Crisafi, 128 N.J. 499, 509 (1992). There are certain areas that a trial judge must discuss with a defendant before accepting a defendant's waiver, such as "the nature of the charges against [him], the statutory defenses

13

to those charges, and the possible range of punishment." Id. at 511. The judge must also inform the defendant of any risks or technical problems of self-representation. Id. at 511-12. The judge must explain that the defendant is obligated to follow the applicable rules of criminal procedure and evidence, as would a licensed attorney. Id. at 512. The judge must explain the difficulties associated with acting as one's own counsel and should "specifically advise the defendant[] that it would be unwise not to accept the assistance of counsel." Ibid. In State v. Reddish, 181 N.J. 553, 594 (2004), the Court expanded on these areas:

> [The]se additional areas would include whether defendant will experience difficulty in separating his roles as defendant and counsel; whether defendant understands that he not only has the right not to testify, but also the right not to incriminate himself in any manner; whether he understands that he could make comments as counsel from which the jury might infer that he had knowledge of incriminating evidence (and the difficulty in avoiding such comments); and whether he fully understands that if he crosses the line separating counsel from witness, he may forfeit his right to remain silent and subject himself to cross-examination by the State.

A trial judge must also ensure the defendant knows that, in the event of a conviction, he cannot seek post-conviction relief (PCR) claiming ineffective assistance of counsel. Ibid. A trial judge is not required to confirm that the

14

defendant understands "technical legal knowledge," but rather must "ascertain whether [the defendant] actually understands the nature and consequences of his waiver." Id. at 594-95.

Here, the judge held a Crisafi hearing to determine whether defendant's waiver of counsel was knowing and intelligent. Defendant stated he wished to proceed pro se because of the "repeated delays" in his case. The judge informed defendant of the risks involved if he chose to represent himself but reminded defendant that he had the right to represent himself. The judge told defendant that he would be expected to follow the applicable court rules and rules of evidence. He warned defendant of the risk of incriminating himself to a jury and being too emotionally invested in the case. The judge informed defendant of his absolute right to testify and reviewed the PCR implications if he represented himself.

The judge found defendant competent to make this decision. Defendant complained about his lack of resources while incarcerated, to which the judge responded, "[w]ell, that's the hand you're holding." He reminded defendant that the delays in his case were a result of court delays and were not within his counsel's control. After this lengthy discussion, defendant stated that he wished to remain with his counsel.

A-0795-18T4

Defendant contends the judge erred by failing to inform him of his option for standby counsel. Standby counsel may be appointed by the judge to aid the defendant if and when he asks for assistance. Id. at 597. However, standby counsel would not have resolved defendant's issue regarding access to legal-research resources, which are limited and shared with other inmates. Defendant asserts that his standby counsel could have helped him increase his access to the jail's legal-research resources, but he failed to cite to any authority indicating that to be true.

Defendant claimed that he "could not have been expected [to] have known about the possibility of standby counsel." However, defendant affirmatively testified that he read Crisafi and State v. DuBois, 189 N.J. 454 (2007), which largely focus on the appointment of standby counsel. Therefore, defendant was aware that standby counsel was an option. Moreover, even if defendant had been informed of the availability of standby counsel, considering that defendant's court-appointed counsel could not improve his access to legal-research resources, there is nothing indicating that standby counsel could have done so either.

The record makes clear that defendant was aware of his right to represent himself, that he intentionally relinquished it, and that he instead chose to

exercise his right to counsel.  <u>See</u> <u>Crisafi</u>, 128 N.J. at 511-12.  The judge did not err in allowing defendant to make that choice.

Reversed and remanded for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0795-18T4