SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Joey J. Fowler (A-5-18) (080880)**

**Argued March 25, 2019 -- Decided July 30, 2019**

**LaVECCHIA, J., writing for the Court.**

The Court reviews an Appellate Division judgment that reversed the murder convictions of defendants Joey Fowler and Jamil Hearns for perceived reversible error by the trial court in failing to charge the jury on self-defense, as well as for failing to charge the lesser-included offenses of aggravated manslaughter and reckless manslaughter.

Fowler and Hearns were indicted for first-degree murder and weapons offenses for the fatal shooting of Donnell Johnson in March 2011. Hearns was also indicted for hindering apprehension or prosecution. At trial, the State and defendants advanced starkly different theories about the shooting. The alleged deficiencies in the jury instructions are based on defendants' version of events, as testified to by Hearns.

Hearns testified that he and Fowler were near a nightclub in Elizabeth around closing time when he saw Johnson and Jones leave a car and approach him. Hearns testified that no one else was in the vicinity at the time. Fowler was around a corner. According to Hearns's account, Jones demanded that Hearns repay the $5000 he owed Jones. Hearns offered a partial payment, but Jones rejected it and pulled a gun from his waistband and pointed it at Hearns's stomach. Believing that Jones was about to shoot him, Hearns "grabbed [Jones's] wrist and his forearm" and "pushed it away," knocking Jones's "wrist against [Hearns's] knee while holding [Jones's] wrist" with the gun "still in [Jones's] hand." According to Hearns's account the gun fired several times during this struggle. The trajectory of the shots was downward but the bullets ricocheted off the sidewalk in the general direction of Johnson.

The State presented a very different version of events. The State presented testimony that Jones and Johnson were speaking to one another outside the vicinity of the nightclub when Hearns approached them and shot Johnson, essentially point blank, as revenge for Johnson's participation in a previous assault and carjacking of Fowler.

At the conclusion of the trial, the court held a jury charge conference. The respective attorneys for Fowler and Hearns stated that neither wanted instructions on lesser-included offenses. The judge indicated he did not "see any version of facts that

1

would support an aggravated manslaughter" charge under either party's version of events. The prosecutor agreed there was no evidence to support a reckless state of mind, and the judge confirmed, "[e]veryone is agreeing, no lesser includeds?" Counsel did not object.

With respect to the other jury instruction issues, Fowler's counsel asked for a "self-defense slash accident" instruction, acknowledging the court's observation that "technically this is not a self-defense because Mr. Johnson was an innocent by-stander." The court stated that "if somebody drafts a paragraph, I would consider putting it into the murder charge," but indicated that, in its view, Hearns's testimony did not show self-defense as to Johnson; rather, it would tend to negate the state of mind needed to support the murder charge. No one submitted a paragraph. The court rejected as inapposite the further request by Hearns for a traditional self-defense instruction.

The court instructed the jury that, to reach a guilty verdict for murder, the jury must determine that Hearns caused the victim's death and did so "purposely or knowingly." The court noted that defendant's act must have caused Johnson's death in a way that was not "too remote, too accidental in its occurrence or too dependent on another's volitional act" to have a "just bearing on the defendant's liability."

Both defendants appealed, arguing that the trial court erred in not instructing the jury on self-defense and lesser-included offenses. 453 N.J. Super. 499, 505-06 (App. Div. 2018). The Appellate Division agreed, determining that the trial court's omission of a self-defense and lesser-included-offense instructions was prejudicial error. Id. at 507.

The Court granted the State's petition for certification. 235 N.J. 187 (2018).

**HELD:** Review of the alleged instructional error must be moored to the facts, and the Court concludes that the omission of the instructional charges was not error under the circumstances of this case. The Court therefore reverses and remands to the Appellate Division for consideration of defendants' arguments that have not yet been addressed.

1. The mental states of "purposely" and "knowingly" are defined in N.J.S.A. 2C:2-2. To be guilty of murder, a person must "cause[] the death of another human being" purposefully or knowingly. N.J.S.A. 2C:11-2, -3. N.J.S.A. 2C:2-3(b) explains that "the actual result must be within the design or contemplation" of the actor or "the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense." (pp. 16-17)

2. "[T]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4(a). If a self-defense charge is requested and supported by some evidence

2

in the record, it must be given. The plain language of the self-defense statute clearly indicates that it is inapplicable to the factual scenario proffered by Hearns. The statute is not drafted to address force used against third parties, but rather force used against a party who uses force against the defendant. Reviewing the jury charges as a whole, the Court concludes that, had the jury believed Hearns's version of events, there were ample instructions to lead them to a verdict of not guilty. Although explicitly stating that an accidental death is incompatible with a conviction for murder would not have been an error, the absence of such explication also did not constitute error. (pp. 17-21)

3. Turning to the lesser-included-offense charges, the inquiry here -- when defendants explicitly declined the opportunity to have the court instruct on the lesser-included charges of aggravated manslaughter and reckless manslaughter -- is whether evidence to support convictions for manslaughter or aggravated manslaughter is clearly indicated from the record; that is, whether that evidence jumps off the page. It does not. Under Hearns's version of the facts, no rational jury could find that he acted recklessly, particularly considering that it was allegedly Jones who pulled the gun and who was holding it when it started discharging before it ever hit Hearns's knee. The Court therefore finds no error in the exclusion of lesser-included-offense charges. (pp. 22-25)

4. The Appellate Division determined that the jury instructions used at trial did not adequately account for circumstances when the defendant "uses force in self-defense, and in doing so recklessly or negligently injures a bystander" and therefore "'may' be found guilty of assault upon the bystander." Fowler, 453 N.J. Super. at 508. The Appellate Division thus presented additional instructions it would require on that point. The Court finds that those additional instructions are not warranted under the circumstances of this case. The instructions given by the trial court appropriately conveyed to the jury defendants' theory about the accidental nature of the shooting and how that fit within the State's proof requirements. Had the jury believed Hearns's version of events, there were ample instructions to lead them to a verdict of not guilty. (pp. 25-30)

**REVERSED and REMANDED for further proceedings.**

**JUSTICE ALBIN, dissenting in part and concurring in part,** agrees that the court was not required to charge the jury on lesser-included offenses but expresses the view that, based on Hearns's testimony, the trial court was bound to honor Hearns's request for a self-defense charge. When N.J.S.A. 2C:3-4(a), N.J.S.A. 2C:3-4(b)(2), and N.J.S.A. 2C:3-9(c) are read together, Justice Albin explains, they make clear that the justification of self-defense is available when a person justifiably acts in self-defense toward an aggressor but accidentally injures or even kills an innocent person.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed an opinion dissenting in part and concurring in part.**

3

SUPREME COURT OF NEW JERSEY

A-5 September Term 2018

080880

State of New Jersey,

Plaintiff-Appellant,

v.

Joey J. Fowler, a/k/a
Joey Williams, Shaquan
Williams, Shaquan Harris,
and Joey Flower, and
Jamil L. Hearns, a/k/a
Khalil Hearns, Jay L. Love,
Jayson Love, James Holmes,
and Jameel Hearns,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
453 N.J. Super. 499 (App. Div. 2018).

| Argued | Decided |
|--------|---------|
| March 25, 2019 | July 30, 2019 |

Milton S. Leibowitz, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
appellant (Michael A. Monahan, Acting Union County
Prosecutor, attorney; Milton S. Leibowitz, of counsel and
on the briefs).

Marcia Blum, Assistant Deputy Public Defender, argued the cause for respondent Joey J. Fowler (Joseph E. Krakora, Public Defender, attorney; Marcia Blum, of counsel and on the briefs).

Michael Confusione, Designated Counsel, argued the cause for respondent Jamil L. Hearns (Joseph E. Krakora, Public Defender, attorney; Michael Confusione, on the briefs and Jamil L. Hearns, pro se, on the supplemental brief).

Lauren Bonfiglio, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Lauren Bonfiglio, of counsel and on the brief).

Michael Gilberti argued the cause for amicus curiae Association of Criminal Defense Attorneys of New Jersey (Jardim, Meisner & Susser, attorneys; Michael Gilberti, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

In this appeal, we review an Appellate Division judgment that reversed the murder convictions of defendants Joey Fowler and Jamil Hearns. The appellate judgment rests on perceived error from omitted jury instructions.

Review of the alleged instructional error at issue must be moored to the facts. At this trial, the State and defendants advanced starkly different theories about the fatal shooting of the victim, Donnell Johnson.

According to the State, Hearns walked up to the victim and, in an act of revenge, shot him at point-blank range. Hearns then returned to Fowler's

waiting car and both attempted to flee but were promptly apprehended by nearby on-duty officers.

According to defendants' version, the victim -- a bystander -- was shot due to the accidental discharge of a gun during a struggle that occurred between Hearns and the victim's cousin, Algere Jones. Hearns testified that Jones confronted him at gunpoint about money Hearns owed to Jones. According to Hearns, in his effort to dislodge the gun from Jones's grasp, a struggle ensued during which Hearns caused Jones's hand, wrist, and/or forearm to strike against Hearns's knee. The gun went off once before, and multiple times during, the striking of Jones's arm against Hearns's knee. Two ricocheting bullets struck Johnson, unbeknownst to Hearns. When the gun fell to the ground, Hearns grabbed it and ran to Fowler's waiting car to get away from Jones.

Taking into account defendants' version of events, the Appellate Division determined that the trial court committed reversible error in failing to charge the jury on self-defense, as well as for failing to charge the lesser-included offenses of aggravated manslaughter and reckless manslaughter, which, when pressed by the court, neither defendant wanted included in the instructions. We conclude that the omission of the instructional charges was not error under the circumstances of this case. We therefore reverse, and we

3

remand this matter to the Appellate Division for consideration of defendants' numerous other arguments that have not yet been addressed.

I.

A.

Johnson was shot on March 5, 2011, and he later died from his wounds. As a result, Fowler and Hearns were indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2); unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). Hearns was also indicted for hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4). On the murder counts, the State charged Hearns as a principle and Fowler under an accomplice theory. A jury convicted both defendants of all charges.

The alleged deficiencies in the jury instructions are based on a review of the facts from the perspective of defendants' version of events, as testified to by Hearns. We therefore begin with a more detailed presentation of Hearns's testimony.

1.

Hearns testified that, at the time of the shooting, he owed Algere Jones $5000 and that Jones had confronted him not long before about repaying the debt. The day of the shooting, Hearns and Fowler had been out socializing and

4

were near a nightclub in Elizabeth around closing time.  Hearns testified he heard two car doors close, turned, and saw Johnson and Jones leave a car and approach him.  Hearns testified that no one else was in the vicinity at the time.  Fowler was around a corner.

According to Hearns's account, Jones demanded that Hearns repay his debt.  Hearns offered a partial payment of $1300, which he had on him, but Jones rejected it.  Johnson tried to convince Jones to accept the partial payment, but Jones was not to be persuaded.  Jones pulled a gun from his waistband and pointed it at Hearns's stomach.  Believing that Jones was about to shoot him, Hearns "grabbed [Jones's] wrist and his forearm" and "pushed it away," knocking Jones's "wrist against [Hearns's] knee while holding [Jones's] wrist" with the gun "still in [Jones's] hand."

Again, according to Hearns's account the gun fired several times during this struggle.  According to Hearns, the first discharge occurred before Jones's wrist hit Hearns's knee.  The gun continued to fire thereafter "each time [the gun] hit [Hearns's] knee."  The trajectory of the shots was downward toward the ground but the bullets ricocheted off the sidewalk in the general direction of Johnson.  Hearns later learned that some shots struck Johnson.  Eventually the gun fell to the ground, and Hearns dove for it to prevent Jones from using it against him.  Hearns ran with the gun back to where Fowler was.  Jones and

Johnson returned to their vehicle and left the area.  Johnson died two days afterward from his gunshot wounds.

The State presented a very different version of events.  The State presented testimony that Jones and Johnson were speaking to one another outside the vicinity of the nightclub when Hearns approached them and shot Johnson, essentially point blank.  The shooting, the State alleged, was committed on Fowler's behalf as revenge for Johnson's participation in a previous assault and carjacking of Fowler.

2.

At the conclusion of the trial, the court held a jury charge conference during which the parties discussed the propriety of including instructions on lesser-included offenses, self-defense, and accident.

At the hearing, the respective defense attorneys for Fowler and Hearns stated that neither wanted instructions on lesser-included offenses.  The trial judge pressed the issue, seeking to ensure everyone was in agreement and had considered all appropriate theories of the case.

> The Court:  . . . [I]s there any evidence in the case . . . from which the jury can conclude that, for example, your client might be guilty of reckless and not murder or aggravated?
>
> [Hearns's Counsel]:  Well, I think the Court sua sponte can make that observation based on the record, and you

6

don't have to reach too far to see there was testimony regarding a struggle.  However --

The Court:  If you think it through, if we accept your client's version of what happened, right?  That means that, you know, Mr. Jones was coming at him with a weapon and then he grabbed the weapon and was, you know, banging it in a way to, you know, protect himself.

[Hearns's Counsel]:  Which is self-defense.

The Court:  Self-defense against Mr. Jones.  If he was charged with something regarding Mr. Jones, it would be self-defense.  He's not charged with any assault or anything vis-à-vis Mr. Jones.  But under what circumstances -- under what facts can the jury conclude a set of facts existed that would support a reckless or aggravated -- your client's version of the facts, he didn't bring a gun.  He didn't have any intent to harm anybody.  Where is there a set of facts that would support -- in the record -- that the jury could conclude that would lead to the conclusion that your client might be guilty of one of the lesser includeds?  I'm having trouble thinking of one.

[Hearns's Counsel]:  Yeah.  In fact --

The Court:  You're agreeing with me?

[Hearns's Counsel]:  I'm agreeing.

The Court: [Fowler's Counsel], you agree with that analysis?

[Fowler's Counsel]:  Yes, Judge.

Later in the conference, the judge reiterated that he did not "see any version of facts that would support an aggravated manslaughter" charge under

7

either party's version of events but invited "anybody to tell [him] any set of facts they can think of that supports that."  The prosecutor agreed there was no evidence to support a reckless state of mind, and then the trial judge confirmed, "[e]veryone is agreeing, no lesser includeds?"  Counsel did not object.

With respect to the other jury instruction issues before us, the record reveals that Fowler's counsel asked for a "self-defense slash accident" instruction, acknowledging the court's observation that "technically this is not a self-defense because Mr. Johnson was an innocent by-stander."  The court stated that it had searched unsuccessfully for such a charge and case law on the issue.  Fowler's counsel followed up, asking if they could "fashion [a charge] in the sense the jury is told Mr. Hearns'[s] testimony is whatever and if you find that to be the case, there's no criminal responsibility on his part for trying to avoid being shot?"  The court responded that

> if somebody drafts a paragraph, I would consider putting it into the murder charge . . . .  But I go back to . . . if you believe what Mr. Hearns says, the jury believes that, it just negates the criminal state of mind for anything, and that's what it does. . . .  What does it do beyond that?  Because it makes it an accident rather than a knowing or intentional or reckless disregarding of the charges that in the State's mind are relevant to manslaughter, reckless manslaughter and murder. . . . So what I came around to was it wasn't self-defense, and that basically it was covered implicitly and explicitly in the charge -- murder charge of what the

8

> appropriate state of mind was and this isn't it. If you believe Mr. Hearns, then this isn't it. The State has not met its burden to prove state of mind because it was just an accident.

Based on the record, it appears that neither defense attorney drafted a suggested "self-defense slash accident" instruction for the court's consideration, as requested by the trial judge. Later during the conference, the court confirmed with Fowler's counsel that

> You're satisfied there's nothing further on -- I'll put in quotes -- self-defense slash accident, close quote[?]
>
> [Fowler's Counsel]: Yes. I leave it to [Hearns's counsel] to argue. He has a different position.

Hearns's counsel asked for a traditional self-defense charge. He argued that, because there was testimony of a struggle over the gun, "the jurors have the right to consider whether the struggle is with Mr. Jones or whether . . . it's a struggle involving Mr. Johnson and under the same scenario." However, the court pointed out that there was "no evidence that there was a struggle with Mr. Johnson," only with Jones. Therefore, the court rejected the request for a self-defense instruction.

### 3.

After the conference, the court charged the jury. With respect to the murder charges, the court instructed that, in order to reach a guilty verdict, the

9

jury must determine that Hearns caused the victim's death and did so "purposely or knowingly." The court further elaborated that:

> In order for you to find a particular defendant guilty of purposeful serious bodily injury murder, the State must prove beyond a reasonable doubt that it was the defendant's conscious object to cause serious bodily injury that then resulted in the victim's death, that the defendant knew that the injury created substantial risk of death and that it was highly probable that death would result. In order for you to find the defendant guilty of knowing serious bodily injury murder, the State must prove beyond a reasonable doubt the defendant was aware that it was practically certain his conduct would cause serious bodily injury that then resulted in the victim's death; that the defendant knew that the injury created a substantial risk of death; and that it was highly probable that death would result.
>
> Whether the killing is committed purposely or knowingly, causing death or serious bodily injury resulting in death must be within the design or contemplation of the defendant.

The court also addressed causation, noting that defendant's act must have caused Johnson's death in a way that was not "too remote, too accidental in its occurrence or too dependent on another's volitional act" such that it would not have a "just bearing on the defendant's liability."

With respect to the charge on possession of a weapon for an unlawful purpose, the court instructed the jury that it must determine, in relevant part, that "[d]efendant possessed the firearm with the purpose to use it against the person or property of another" and that the purpose was unlawful. The court

10

explained that "[i]n this case the State contends that the defendant's unlawful purpose in possessing the firearm was to shoot Donnell Johnson," but that defendants "contend[] that Algere Jones brought the gun to the scene with the intent to use it unlawfully against defendant Hearns."

The jury convicted both defendants of murder, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. It also convicted Hearns of hindering apprehension or prosecution.

B.

Both defendants appealed. Relevant to this appeal, in light of Hearns's testimony about an accidental shooting, defendants argued that the trial court erred in not instructing the jury on self-defense and lesser-included offenses.[1] State v. Fowler, 453 N.J. Super. 499, 505-06 (App. Div. 2018). The Appellate Division agreed, determining that the trial court's omission of a self-defense instruction and corresponding instructions on lesser-included offenses was prejudicial error. Id. at 507.

The Appellate Division stated that, as "[a] necessary first step," the trial court should have given a molded self-defense charge, which would have "set

---

[1] Defendants also raised arguments concerning evidentiary issues, sentencing, severance, and constitutional violations. State v. Fowler, 453 N.J. Super. 499, 505-07 (App. Div. 2018). Because the Appellate Division ordered a new trial on the basis of flawed jury instructions, however, the appellate court did not address the other points of appeal. Id. at 511.

the stage for the jury's consideration of whether Hearns acted recklessly by wrestling with Jones and banging the gun against his knee during the struggle in the midst of a crowd." Id. at 508. The court noted that reckless conduct could be an exception to the affirmative defense of self-defense under N.J.S.A. 2C:3-9(c), leaving defendants open to conviction for aggravated or reckless manslaughter. Id. at 509 (citing N.J.S.A. 2C:11-4(a)(1), (b)(1); State v. Rodriguez, 195 N.J. 165, 172-73 (2008)). The court reasoned that there were sufficient facts in evidence for a jury to find that Hearns acted in self-defense against Jones, that he did so in a reckless manner, and that the reckless act caused Johnson's fatal injuries. Id. at 510. Therefore, the Appellate Division concluded that the trial court should have given molded instructions on self-defense, the recklessness exception to self-defense, and aggravated and reckless manslaughter. Id. at 509-10.

The Appellate Division also determined that an additional instruction should have been given to explain to the jury that Fowler, who was accused of murder via accomplice liability, could not be found guilty if Hearns was only guilty of one of the lesser-included offenses. Id. at 510.

We granted the State's petition for certification. 235 N.J. 187 (2018). We also granted amicus curiae status to the Association of Criminal Defense Lawyers of New Jersey (ACDL) and the Attorney General of New Jersey.

12

## II.

### A.

According to the State, the trial court's decision not to instruct the jury on self-defense was not error. The State argues Hearns's testimony did not provide a basis for self-defense; rather, it presented a factual scenario that would negate the requisite purposeful or knowing mens rea of murder. The jury instructions covered all the elements necessary for defendants' conviction of murder. And the instructions were sufficient to cover how defendants' version of the facts -- that the shooting was an accident -- should be considered in connection with those elements. Further, the State notes that the facts presented at trial could not have led to a finding of recklessness and that the exclusion of lesser-included charges was therefore not improper.

### B.

The Attorney General supports the State's position that the jury instructions were not erroneous. The Attorney General adds that counsel for both defendants had many opportunities to object to the exclusion of jury charges or to propose their own but failed to do so, demonstrating that the jury charges were in line with defendants' theory of the case.

The Attorney General also notes that, although the trial court did not give a specific instruction on accident, the instructions clearly indicated that

13

the State was required to demonstrate a purposeful or knowing mens rea, which would be incompatible with a finding that Johnson's death was an accident. And, the Attorney General points out that the instructions on causation for murder explained that a defendant's act must not be "too remote, too accidental in its occurrence or too dependent on another's volitional act" in relation to the victim's death.

Finally, the Attorney General argues that instructions on lesser-included charges would have been improper, adding that the lack of a factual basis for such charges would make the instructions on the elements of manslaughter misleading, confusing, or likely to incentivize a compromise verdict.

## C.

Fowler argues that the trial court erred when it did not include a self-defense jury instruction. Absent a self-defense instruction, the jury was only told "how it could convict defendants on the [S]tate's evidence" but not "how it could acquit defendants on the defense evidence." Fowler further asserts that theories of accident and self-defense are not inconsistent. Finally, citing out-of-state case law, Fowler points to instances in which other jurisdictions have transferred the intent of self-defense to harm done to a third party and urges adoption of such an approach in New Jersey.

14

D.

Hearns's arguments are similar to Fowler's. According to Hearns, without a self-defense instruction, the jury was not informed of the "full range of rational choices that the trial proofs afforded." Hearns stresses that such a lack of information had the potential to be particularly prejudicial should the jury have credited parts but not all of defendants' theory -- for example if the jury concluded that Jones instigated the confrontation but not that the gun went off accidentally.

In a pro se brief, defendant Hearns adds that the trial court should have charged the jury with lesser-included offenses, self-defense, recklessness, imperfect self-defense, and accident.

E.

The ACDL also supports the Appellate Division's decision. It asserts that without molded jury instructions to fit the unique facts of this case -- which combined issues of self-defense and accident -- the jury was not given proper guidance as to how to treat defendants' evidence, depriving them of a fair trial.

III.

We begin our analysis with the debate over the self-defense charge, which occupied the trial court's and the parties' attention in the charge

15

conference and was also the necessary first step in the Appellate Division's reasoning for finding the jury instructions flawed. First, we set forth some basic background principles on murder and the affirmative defense of self-defense.

A.

1.

The New Jersey Code of Criminal Justice provides that "[a] person is guilty of criminal homicide" -- identified, as is relevant here, as murder or manslaughter, N.J.S.A. 2C:11-2(b) -- "if he purposely, knowingly, [or] recklessly . . . causes the death of another human being," N.J.S.A. 2C:11-2(a). "[C]riminal homicide constitutes murder when . . . the actor purposely" or "knowingly causes death or serious bodily injury resulting in death." N.J.S.A. 2C:11-3(a)(1), (2).

The mental states of "purposely" and "knowingly" are defined in N.J.S.A. 2C:2-2. "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(b)(1). "A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result." N.J.S.A. 2C:2-2(b)(2).

16

To be guilty of murder, a person must "cause[] the death of another human being" purposefully or knowingly. See N.J.S.A. 2C:11-2 (emphasis added); N.J.S.A. 2C:11-3. With respect to causation, N.J.S.A. 2C:2-3(b) explains that,

> [w]hen the offense requires that the defendant purposely or knowingly cause a particular result, the actual result must be within the design or contemplation, as the case may be, of the actor, or, if not, the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.
>
> [(emphases added).]

## 2.

The Criminal Code provides for self-defense as an affirmative defense to an otherwise criminal act of homicide. N.J.S.A. 2C:3-4(a) sets forth the basic principles of the self-defense justification:

> Subject to the provisions of this section and of [N.J.S.A.] 2C:3-9, the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

17

In referring to the "use of force," subsection (a) does not distinguish between non-deadly and deadly force; both can be justifiable. See ibid.; see also N.J.S.A. 2C:3-4(b)(2) (imposing certain limitations on the use of deadly force).

B.

If a "self-defense charge is requested and supported by some evidence in the record, it must be given." Rodriguez, 195 N.J. at 174. However, absent a request from the parties, "evidence must 'clearly indicate[]' such a defense" to warrant a self-defense instruction. State v. Galicia, 210 N.J. 364, 390-91 (2012) (alteration in original) (quoting State v. Perry, 124 N.J. 128, 161 (1991)).

As noted, under the Criminal Code "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4(a) (emphases added). As with all statutes, when interpreting provisions of the Criminal Code the Court first looks to "the statute's plain language, giving terms their ordinary meaning." State v. Fede, 237 N.J. 138, 148 (2019) (citing State v. S.B., 230 N.J. 62, 67 (2017)). If the plain language is clear,

18

"we then are duty-bound to apply that plain meaning."  Ibid. (citing Kean Fed'n of Teachers v. Morell, 233 N.J. 566, 584 (2018)).

Because Hearns made a request for a traditional self-defense charge we dispose quickly of the argument.

The plain language of our self-defense statute clearly indicates that it is inapplicable to the factual scenario proffered by Hearns.  The language of the statute is not drafted to address force used against third parties, but rather offers justification for force used against a party who uses force against the defendant.  Therefore -- as noted by the trial court, and ultimately not contested by either defendant's attorney -- a self-defense instruction would have been appropriate had Jones, the alleged attacker, been the victim, but not Johnson as a third-party bystander.  Contrary to the assertion of the dissent, based on the testimony of Hearns, the trial court was not "bound to honor Hearns's request for a self-defense charge on the murder count," post at __ (slip op. at 2), because the death of a bystander does not fit in the wording of our self-defense statute.  Indeed, the Appellate Division ruled consistently with our view on this point.

We hold that the trial court did not err in denying a traditional self-defense charge when there was no evidence of use of force by Johnson against Hearns.

19

## C.

Most telling that a traditional self-defense charge was not an applicable instruction in this instance was defense counsels' request for a "self-defense slash accident" instruction, seemingly conceding that this was not an alleged act of self-defense, but a situation of a different ilk. It was. The victim, Johnson, was not the aggressor against whom Hearns was protecting himself in self-defense. Jones was the aggressor and defendants faced no charges of harming Jones.

Although the trial court was open-minded about whether to include language to elaborate on the role that accident played should the jury have believed Hearns's version of events, the requested proposed language for a charge was not provided. We conclude that defendants were not prejudiced when the trial court did not pick up defense counsels' torch and provide its own language to honor defendants' half-hearted request for a charge melding their accident theory into the structure of self-defense.

Reviewing the jury charges as a whole, we conclude that, had the jury believed Hearns's version of events, there were ample instructions to lead them to a verdict of not guilty. The jury was explicitly told that, to find defendants guilty of murder, Hearns's actions must have caused Johnson's death in a way that was not "too remote, <u>too accidental in its occurrence</u> or too

20

dependent on another's volitional act." (emphasis added). The jurors were further instructed that "causing death or serious bodily injury resulting in death must be within the design or contemplation of the defendant." Finally, the jury was told that each of these elements must have been proved beyond a reasonable doubt by the State.[2]

A guilty verdict under those directives is simply incompatible with a belief that Johnson's death was unintentional or accidental. Therefore, although explicitly stating that an accidental death is incompatible with a conviction for murder would not have been an error, we conclude that the absence of such explication also did not constitute error.[3]

---

[2] In light of those instructions, we reject the argument that the State was advantaged because it was not required to disprove the affirmative defense of self-defense. The State was clearly required to show that Johnson's murder was both Hearns's intent and not an accidental or remote consequence of other actions. This inherently requires the State to disprove that Hearns's actual goal or intent was only to protect himself.

[3] We also note that defendants' convictions for possession of a weapon for an unlawful purpose further corroborates that defendants' convictions were the result of the jury believing the State's version of events over Hearns's. To sustain that conviction, the jurors were instructed that they must find that the "defendant possessed the firearm with the purpose to use it against the person or property of another" in an unlawful manner, specifically that "the defendant's unlawful purpose in possessing the firearm was to shoot Donnell Johnson." Had the jurors believed Hearns's version of events, they could not have simultaneously found that Hearns possessed a weapon for the purpose of shooting Johnson -- who was allegedly accidentally shot.

21

IV.

We turn next to the argument about the lesser-included offenses. Jury instructions for lesser-included offenses are reviewed under a standard that examines whether "a rational basis" exists "for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense." State v. Funderburg, 225 N.J. 66, 81 (2016) (quoting State v. Savage, 172 N.J. 374, 396 (2002)). When a charge is requested by the parties, the trial court must "examine the record thoroughly to determine if the rational-basis standard has been satisfied." State v. Alexander, 233 N.J. 132, 142 (2018) (quoting State v. Crisantos, 102 N.J. 265, 278 (1986)).

However, if the parties do not request a lesser-included-offense charge, reviewing courts "apply a higher standard, requiring the unrequested charge to be 'clearly indicated' from the record." Id. at 143. This does not require the trial court to

> "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty," State v. Brent, 137 N.J. 107, 118 (1994), or "'to meticulously sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain' a lesser charge," Funderburg, 225 N.J. at 81 (quoting State v. Choice, 98 N.J. 295, 299 (1985)). Instead, the evidence supporting a lesser-included charge must "jump[ ] off the page" to trigger a trial court's duty to sua sponte instruct a jury on that charge. State v. Denofa, 187 N.J. 24, 42 (2006).

22

[Ibid. (alterations and omissions in original).]

Therefore, the inquiry here -- when defendants explicitly declined the opportunity to have the court instruct on the lesser-included charges of aggravated manslaughter and reckless manslaughter -- is whether evidence to support convictions for manslaughter or aggravated manslaughter "jump[s] off the page."  We hold they do not.

A defendant commits manslaughter when he acts recklessly, causing the death of another human being.  N.J.S.A. 2C:11-4(b)(1).  A killing will be considered to constitute aggravated manslaughter if it is done recklessly and "under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1).  A defendant acts recklessly when he or she "consciously disregards a substantial and unjustifiable risk" that death will occur from the defendant's conduct, and disregarding the risk "involves a gross deviation from the standard of conduct that a reasonable person would observe" in the same situation.  N.J.S.A. 2C:2-2(b)(3).

In defendants' trial, the jury was presented with two distinct, mutually exclusive versions of events, neither of which could be viewed as demonstrating the conscious disregard of a substantial and unjustifiable risk. The State depicted a premeditated and purposeful murder.  Defendants' version asserted that, faced with an armed assailant at close range, Hearns

23

attempted to disarm his attacker using non-lethal force in an unpopulated area. The defendants' version deserves careful scrutiny to assess whether there was any basis whatsoever to support a claim of recklessness, let alone a showing that jumps from the page.

As the Attorney General succinctly yet comprehensively summarized in its argument, the facts to which Hearns specifically testified were that he thought Jones was going to kill him, so he grabbed Jones's wrist and banged it against his own knee, in an attempt to protect himself from being shot at close range. Assuming Hearns's testimony to be true, he attempted to unarm a gunman who intended to shoot him. He did not aimlessly grab for the gun, causing it to be pointed carelessly in the air or directed at someone. Instead, he had the gun, which was in Jones's hand, pointed toward the ground as he banged it against his own knee. Under Hearns's version of the facts, we conclude that no rational jury could find that he acted recklessly, particularly considering that it was allegedly Jones who pulled the gun and who was holding it when it started discharging before it ever hit Hearns's knee.[4]

---

[4]  To the extent that the Appellate Division's decision refers to the gun discharging when it fell to the ground, we discern no evidence in this record to support that inference. The facts recited above, and on which we rely, are those distilled from Hearns's actual testimony.

24

In sum, neither the State's nor defendants' scenario reasonably depicts Hearns as an actor who consciously disregarded a substantial and unjustifiable risk providing a platform for a manslaughter or aggravated manslaughter charge based on recklessness, let alone constitutes a scenario where that conclusion jumps off the page.[5]

We therefore find no error in the exclusion of lesser-included-offense charges.

V.

In this matter the Appellate Division came to a different conclusion and determined that the jury instructions were insufficient, warranting a new trial. Specifically, the appellate court determined that

> [a] necessary first step was to give the jury a molded self-defense charge -- but other instructions were also necessary because the injury was allegedly accidentally

---

[5] In making this determination we acknowledge that, in dicta, this Court has stated a defendant could commit manslaughter or aggravated manslaughter if that defendant uses force in self-defense but does so in a reckless manner, killing a third party. Rodriguez, 195 N.J. at 172-73 ("[A]cting on an honest and reasonable belief in the need to use deadly force against an aggressor is not reckless, but . . . endangering third parties in the use of such force may be reckless."). In Rodriguez, the decedent was the aggressor and was involved in a deadly struggle with the defendant -- and not an innocent bystander as was the victim here. Id. at 170. Also, the defendant actually used deadly force by purposefully stabbing the decedent. Ibid. The circumstances of the instant case are a far cry from those in Rodriguez where, in dicta, our Court penned the language that the Appellate Division seized upon here. Moreover, we reiterate that Hearns's alleged use of force in this instance could not be said to "jump off the page" as reckless.

25

inflicted on another -- not the attacker. Self-defense does, however, set the stage for the jury's consideration of whether Hearns acted recklessly by wrestling with Jones and banging the gun against his knee during the struggle in the midst of a crowd.

[Fowler, 453 N.J. Super. at 508.]

In arriving at that conclusion, the Appellate Division focused on an important caveat to the use of the self-defense justification, id. at 590, which states that

> [w]hen the actor is justified under sections 2C:3-3 to 2C:3-8 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.
>
> [N.J.S.A. 2C:3-9(c).]

Based on that statute and dicta from this Court's opinion in Rodriguez, the Appellate Division determined that the jury instructions used at trial did not adequately account for circumstances when the defendant "uses force in self-defense, and in doing so recklessly or negligently injures a bystander" and therefore "'may' be found guilty of assault upon the bystander." Fowler, 453 N.J. Super. at 508 (citing Rodriguez, 195 N.J. at 172-73).

The Appellate Division conceded that our statutes would not permit self-defense to "serve as legal justification for an assault on a third party" but

26

determined that N.J.S.A. 2C:3-9(c) should, "[b]y analogy . . . inform[] the lesser-included offenses that should have been charged to the jury." Id. at 509. The Appellate Division concluded that

> [g]iving the jury the alternative lesser-included forms of manslaughter allows them, within the framework of the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 to 104-9, to assess whether the killing was truly accidental. If it was not murder, aggravated manslaughter, or manslaughter, then Hearns could be fairly said to have accidentally killed and will be acquitted. But the jury must be afforded the opportunity to make the decision with explicit guidance. The issue is not whether the killing was accidental -- but whether the State has proven, beyond a reasonable doubt, any of the offenses included in the Code.
>
> [Id. at 510 (emphasis added).]

We disagree.

In formulating that reasoning, the Appellate Division was focused on allowing the jury to evaluate whether defendants were guilty of manslaughter by way of the accidental discharge of a weapon. However, as explained in Section IV, supra, the inclusion of the lesser-included offenses of manslaughter and aggravated manslaughter were expressly rejected by defense counsel. Because those charges were not requested, the question was not "whether the State has proven, beyond a reasonable doubt, any of the offenses included in the Code," but whether a factual basis for the inclusion of charges

27

for manslaughter or aggravated manslaughter "jump[ed] off the page."  As previously explained, they do not.

The circuitous instructions proposed by the Appellate Division to contextualize the lesser-included offenses underscore that point.  In order to justify the manslaughter charges, the trial court would have had to introduce the concept of self-defense -- which the Appellate Division concedes does <u>not</u> apply to Hearns -- for the purpose of introducing an exception to that defense.  This, again, was all in order to support the possibility of a jury finding of guilt of a lesser-included offense that neither the State nor defendants requested.[6]

Rather than jury instructions being a roadmap of clarity for the jury to follow, the course proposed would present the unwelcome prospect of misleading or confusing the jury.  Those are the very results that are meant to

---

[6] The dissent agrees with us that the lesser-included offenses were not appropriate on the facts of this case.  The Appellate Division pressed for a hybrid self-defense charge under these circumstances because such a charge, in its view, would set the stage for the lesser-included offenses that we, and the dissent, agree do not apply.  Curiously, the dissent nevertheless finds error in the failure to give a self-defense charge.  Even the parties and the Appellate Division agreed a traditional self-defense charge did not fit these facts.

For completeness, with respect to the further argument of our dissenting colleague, we note the dissent cites out-of-state cases -- consistent with the policy of MPC 3.09, on which our N.J.S.A. 2C:3-9(c) is modeled -- the holdings of which we do not disagree with.  However, those cases are inapposite here.  Hearns did use some force against Jones but that force is not what killed Johnson.  Hearns did not use force against Johnson.

28

be curbed through jury instructions. Despite the appellate court's well-intentioned desire to be thorough, we conclude that the additional instructions it would require are not warranted under the circumstances of this case.

In reaching that conclusion, we reiterate how the instructions given by the trial court appropriately conveyed to the jury defendants' theory about the accidental nature of the shooting and how that fit within the State's proof requirements. The jurors were explicitly told that, to find defendants guilty of murder, Hearns's actions must have caused Johnson's death in a way that was not "too remote, <u>too accidental in its occurrence</u> or too dependent on another's volitional act." (emphasis added). They were also instructed that "causing death or serious bodily injury resulting in death must be within the design or contemplation of the defendant." And, they were told that each of these elements must have been proved beyond a reasonable doubt by the State. Considering the jury charges as a whole, we have no trouble concluding that, had the jury believed Hearns's version of events, there were ample instructions to lead them to a verdict of not guilty.

In conclusion, we adhere to the literal language of the self-defense justification authorized by the Legislature in the Criminal Code in determining that a self-defense instruction was not warranted in this matter. And we hold that the trial court did not err in failing to provide instructions on the lesser-

29

included offenses of manslaughter and aggravated manslaughter, which were not requested and do not jump off the page from the record in this matter.

## VI.

We therefore reverse the Appellate Division's judgment, reinstate defendants' convictions, and remand this matter for consideration of the arguments not reached in the prior disposition.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed an opinion dissenting in part and concurring in part.

State of New Jersey,

Plaintiff-Appellant,

v.

Joey J. Fowler, a/k/a
Joey Williams, Shaquan
Williams, Shaquan Harris,
and Joey Flower, and
Jamil L. Hearns, a/k/a
Khalil Hearns, Jay L. Love,
Jayson Love, James Holmes,
and Jameel Hearns,

Defendants-Respondents.

JUSTICE ALBIN, dissenting in part and concurring in part.

Defendant Jamil Hearns testified that he acted in self-defense when Algere Jones pointed a handgun at him and demanded money allegedly owed to him. In defending himself, Hearns wrestled Jones for the gun, which discharged killing Hearns's cousin, Donnell Johnson, who was standing nearby. Based on Hearns's testimony, the trial court was bound to honor Hearns's request for a self-defense charge on the murder count, despite the accidental death of a bystander. I agree with the Appellate Division that the trial court's failure to give that basic charge denied Hearns and his co-defendant Joey Fowler a fair trial. See State v. Fowler, 453 N.J. Super. 499,

1

511 (2018). I dissent because the majority, in overturning the Appellate Division, has taken a constricted view of self-defense that is at odds with the New Jersey Code of Criminal Justice, our jurisprudence, and case law in other jurisdictions.

I concur with the majority that the trial court was not required to charge the jury on the lesser-included offenses of aggravated manslaughter and reckless manslaughter. Neither Hearns nor Fowler requested the lesser-included charge, and nothing in the record clearly indicates that Hearns -- if he acted in self-defense -- did so recklessly.

## I.

## A.

N.J.S.A. 2C:3-4(a) generally provides that "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." See also N.J.S.A. 2C:3-4(b)(2) (providing that the use of deadly force is justifiable when "the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm"). A self-defense charge "must be given" so long as the charge "is requested and supported by some evidence in the record." State v. Rodriguez, 195 N.J. 165,

2

174 (2008). In determining whether there is "some evidence" to support the charge, ibid., the evidence must be "viewed in the light most favorable to the defendant," id. at 170 (quoting State v. Galloway, 133 N.J. 631, 648 (1993)). When self-defense is in the case, the State is required to disprove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Kelly, 97 N.J. 178, 200 (1984). In other words, an "acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense." Ibid.

N.J.S.A. 2C:3-9(c) recognizes that a person justifiably defending himself -- using force "toward the person of another" -- may injure or even kill an innocent bystander. N.J.S.A. 2C:3-9(c) is our state's analogue to section 3.09 of the Model Penal Code. Compare N.J.S.A. 2C:3-9(c), with Model Penal Code and Commentaries § 3.09 at 146-47 (Am. Law. Inst. 1985). In the comments to section 3.09, the drafters of the Model Penal Code explain that, "if the only way to save one's life is to use deadly force that creates some risk of harm to others, that force might be justified." Model Penal Code and Commentaries § 3.09 cmt. 3 at 155. In construing Section 3.09 of the Model Penal Code, the Supreme Court of Pennsylvania has held that punishing a crime victim who inadvertently injures a bystander while justifiably exercising his right of self-preservation furthers no policy of the criminal law. Commonwealth v. Fowlin, 710 A.2d 1130, 1132, 1134 (Pa. 1998).

3

The person justifiably acting in self-defense is therefore only criminally liable if, in defending himself, he recklessly causes injury or death to an innocent third person. See N.J.S.A. 2C:3-9(c). Under New Jersey's Criminal Code, the justification of self-defense "is unavailable in a prosecution for such recklessness or negligence towards innocent persons" when the person using force toward another person "recklessly or negligently injures or creates a risk of injury to innocent persons." Ibid. (emphasis added). New Jersey's Code does not criminalize negligent homicide or negligent assault. Therefore, a defendant is stripped of self-defense only if he recklessly causes harm to an innocent person. See Rodriguez, 195 N.J. at 172.

When N.J.S.A. 2C:3-4(a), N.J.S.A. 2C:3-4(b)(2), and N.J.S.A. 2C:3-9(c) are read together, they make clear that the justification of self-defense is available when a person justifiably acts in self-defense toward an aggressor but accidentally injures or even kills an innocent person.

For example, a person who defends herself from an axe-wielding assailant is not stripped of the justification of self-defense if, acting reasonably, she shoots at him but misses and accidentally kills an innocent bystander. The same would be true if in attempting to disarm a robber brandishing a gun -- acting in self-defense -- she accidentally kills a bystander.

4

In those circumstances, if the prosecution does not disprove her self-defense claim, she is entitled to an acquittal.

That common-sense conclusion flows from our Code of Criminal Justice and is recognized by other jurisdictions. See, e.g., People v. Mathews, 91 Cal. App. 3d 1018, 1024 (Dist. Ct. App. 1979) ("[T]he doctrine of self-defense is available to insulate one from criminal responsibility where his act, justifiably in self-defense, inadvertently results in the injury of an innocent bystander."); Nelson v. State, 853 So. 2d 563, 565 (Fla. Dist. Ct. App. 2003) ("[I]f the killing of the party intended to be killed would, under all the circumstances, have been excusable or justifiable homicide upon the theory of self-defense, then the unintended killing of a bystander, by a random shot fired in the proper and prudent exercise of such self-defense, is also excusable or justifiable." (quoting Brown v. State, 94 So. 874, 874 (Fla. 1922))); People v. Jackson, 212 N.W.2d 918, 919 (Mich. 1973) ("The unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense."); People v. Morris, 491 N.Y.S.2d 860, 863 (App. Div. 1985) ("If a reasonable view of the evidence indicated that defendant may have been justified in shooting Gibson, then defendant was no less justified in shooting Avery accidentally.").

In short, a person who unintentionally injures an innocent bystander while using justifiable force in self-defense has committed no crime.

B.

Hearns testified that Jones, in attempting to collect on a purported debt, threatened him with a handgun outside a nightclub. With the gun pointed at his stomach and fearing for his life, Hearns grabbed the lower part of Jones's arm and repeatedly banged it against his own knee, "trying to knock the gun out of [Jones's] hand." During the struggle, as Hearns used force against Jones, the gun discharged five or six times. Johnson -- Jones's cousin -- was standing nearby and accidentally killed by one or more of the stray bullets. Hearns's account clearly amounted to "some evidence in the record" of self-defense. See Rodriguez, 195 N.J. at 174. Accordingly, at the request of Hearns, the trial court was required to give a self-defense charge and instruct the jury that the prosecution had the burden of disproving self-defense beyond a reasonable doubt. See Kelly, 97 N.J. at 200. If the jury believed that Hearns's testimony raised a reasonable doubt, both defendants had a complete self-defense justification. See Rodriguez, 195 N.J. at 174-75.

The trial court's failure to give the requested self-defense charge deprived both Hearns and his alleged accomplice Fowler of a fair trial. See Rodriguez, 195 N.J. at 175 (emphasizing that "[c]lear and correct jury

6

instructions are essential for a fair trial" (quoting State v. Martini, 187 N.J. 469, 477 (2006))); see also State v. Grunow, 102 N.J. 133, 148 (1986) ("Erroneous instructions on matters or issues material to the jurors' deliberations are presumed to be reversible error.").

I therefore would remand for a new trial. See Rodriguez, 195 N.J. at 176.

## II.

Nothing in Hearns's testimony -- or any other part of the record -- suggests that he acted recklessly in causing Johnson's death. Because neither Hearns nor Fowler requested that the trial court charge the lesser-included offenses of aggravated manslaughter or reckless manslaughter, the court was not obliged to give those charges unless the record "clearly indicated" evidence of Hearns's recklessness. See State v. Denofa, 187 N.J. 24, 42 (2006). Evidence of Hearns's recklessness was not "jumping off the page" -- the requisite precondition for the court to give sua sponte the non-requested lesser-included charges. See ibid.

The trial court thus did not err in failing to charge the jury on the lesser-included offenses of aggravated manslaughter and reckless manslaughter.

## III.

For the reasons expressed, unlike the majority, I would affirm the Appellate Division's judgment that Hearns and Fowler were deprived of a fair trial by the trial court's failure to charge the jury on self-defense. I concur with the majority that the trial court did not err in not charging the jury on the lesser-included offenses of aggravated manslaughter and reckless manslaughter, and therefore would reverse the Appellate Division on that issue. Accordingly, I respectfully dissent in part and concur in part.